IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Unula Boo Shawn Abebe,<br>a.k.a. Unula B. Abebe,<br><br>      Plaintiff,<br><br>vs.<br><br>Sharonda Sutton; Jamie Belue; James Harris;<br>Ernest Rowe; and Williams Byars,<br><br>      Defendants. | ) C/A No. 5:12-202-MBS-KDW<br>)<br>)<br>)<br>)<br>) **REPORT AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff, Unula Boo Shawn Abebe, also known as Unula B. Abebe, is a state prisoner in the Broad River Correctional Institution ("BRCI") of the South Carolina Department of Corrections ("SCDC"), in Columbia, South Carolina, who is proceeding pro se and *in forma pauperis*. Plaintiff brings this action "pursuant to the Universal Declaration of Human Rights of the United Nations" [("UDHR")], alleging that Defendants are "being sued in their official and individual capacity for damages and declaratory relief,"[1] "for violation of Article # 3, 12 and 20(1) of the [UDHR]." ECF No. 1 at 1, "Preliminary Statement." In his Complaint's "Statement of Claims," Plaintiff presents seven counts in which he also asserts Defendants violated UDHR Articles 28; 2 and 7; and 17(2). *See* ECF No. 1, ¶¶ 29-33.[2] Plaintiff alleges that the court has jurisdiction over this action:

---

[1] Plaintiff also seeks injunctive relief. ECF No. 1 ¶¶ 51-54.

[2] Plaintiff's Complaint alleges that: Article 3 protects his "rights to liberty and security;" Article 12 protects his "rights against arbitrary interference with his correspondence and against attacks upon his reputation;" Article 20(1) protects his "rights to freedom of peaceful association;" Article 28 protects his "rights to a social order;" Articles 2 and 7 protect his "rights to equal protection of the law and right against discrimination;" and Article 17(2) protects his "rights against arbitrary deprivation of his property." ECF No. 1, ¶¶ 29-33.

by the United States being a member of the U.N. and signatory of the Universal Declaration of Human Rights. As a member of the U.N. the U.S. is bound by the provisions of the U.D.H.R., 28 U.S.C. § 1331, 1343. The U.D.H.R. is applicable to the U.S. through the Due Process Clause of the 14th U.S. Constitutional Amend. Declaratory judgment jurisdiction is under 28 U.S.C. 2201.

ECF No. 1 ¶ 1.

The case is before the undersigned United States Magistrate Judge for a report and recommendation following pre-service review, pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) D.S.C. Having reviewed the Complaint in accordance with applicable law, the undersigned recommends that it be summarily dismissed, without prejudice and without issuance and service of process, because it fails to state a claim on which relief may be granted by this court.

**BACKGROUND**

Plaintiff alleges that, in 2008, he founded an organization called "the Silent Knights of the Folk Nation," which is "a member of the Alliance known to many as 'Folk.'" ECF No. 1, ¶¶ 9-10. Plaintiff alleges that, on April 4, 2011, he gave a sealed letter to Defendant Harris (who is alleged to be BRCI mail room employee) to be mailed via the United States Postal Service. Plaintiff alleges that, instead of being placed into the outgoing mail, the letter was opened by Defendant Harris and/or Defendant Belue (who is alleged to be a BRCI sergeant) and, because "it contained an old organizational structure and other documents of the Silent Knights, showing its affiliation with Folk," Plaintiff was "charged with violating the prison rule against unauthorized inmate organization and participation in a security threat group," *i.e.* SCDC Policy OP-22.14. *Id*. ¶¶ 11-14. Plaintiff alleges that Defendant Sutton (who is alleged to be a BRCI major) and Defendant Rowe (who is alleged to be a BRCI disciplinary hearing officer) subjected Plaintiff to a disciplinary process and "convicted [Plaintiff] in his absence and [Plaintiff] was not provided with the necessary forms to

2

exhaust administrative remedies," and "as a result of the conviction, Def. Rowe sanction[ed Plaintiff] depriving [Plaintiff] of his privileges." *Id.* ¶ 20. Plaintiff alleges that SCDC Policy OP-22.14 "does not list 'Folk' to be a security threat group . . . therefore there was no way [Plaintiff] knew or could have known he was violating a rule." *Id.* ¶¶ 22-25. Plaintiff alleges that Policy OP-22.14, "a policy of which Defendant William Byars (def. Byars [SCDC director]) is responsible []," is "unconstitutional[ly] vague," and that "as a result of the defendants['] acts, [Plaintiff] suffered the loss of his privileges and mental and emotional injury, humiliation and embarrassment and defendants acted maliciously[,] sadistically and intentionally[,] recklessly and callously and knowingly." *Id.* ¶¶ 22-28.

In the portion of his Complaint labeled "Punitive Damages," Plaintiff alleges Defendants acted with "intentional infliction of emotional distress." ECF No. 1 ¶ 41. In the portion of the Complaint labeled "Compensatory Damages," Plaintiff alleges, in brief, conclusory fashion, that "Defendants caused [Plaintiff] physical injury," and references his earlier allegation that he lost unspecified privileges as a result of his disciplinary conviction. *Id.* ¶¶ 43-46. Plaintiff asks for "nominal damages" of $250,000, punitive damages of $250,000, and compensatory damages of $250,000. *Id.* ¶¶ 47, 48. Plaintiff also asks that Defendants be subjected to "civil arrest upon final process (arrest on final process) pursuant to Rule 64.01 Fed. R. Civ. P.; and S.C. Code 1976 § 15-17-20(6); 15-19-10(3)," *Id.* ¶ 50. Plaintiff also asks for injunctive relief: (1) ordering Defendant Byars "to either unrestrict SCDC Policy OP-21.44 'Security Threat Group' or to revise SCDC Policy OP-22.14 to list the groups SCDC consider[s] a[] threat to its security and a list of unauthorized inmate organization[,]"; (2) ordering Defendants to" refrain from labeling Folk as a security threat group and a gang;" (3) ordering Defendants to "refrain from labeling the Silent Knights as a gang;" and

(4) ordering Defendants to "refrain for discriminating against [Plaintiff] because of his status as a prisoner and associate of Folk." *Id.* ¶¶ 51-54. Plaintiff also requests a declaratory judgment "to adjudge that citizens of the U.S. are entitle[d] to the rights under the U.D.H.R. and that the federal courts, under the due process clause of the 14th Amend., ha[ve] jurisdiction to entertain a U.D.H.R. action in the same way the state does a 1983 claim." *Id.* ¶ 55.

## PRO SE AND *IN FORMA PAUPERIS* REVIEW

Under established local procedure, the court conducted a careful review of the pro se complaint pursuant to 28 U.S.C. §§ 1915, 1915A, the Prison Litigation Reform Act ("PLRA"),[3] and the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Corrections*, 64 F.3d 951 (4th Cir. 1995); and *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

Plaintiff filed his Complaint pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A finding of frivolousness can be made where the complaint "lacks an arguable basis either in law or in fact." *Denton*, 504 U.S. at 31. Hence, section 1915(e)(2)(B) permits the court to *sua sponte* dismiss a claim based on a meritless legal theory. *Neitzke*, 490 U.S. 319; *Allison v. Kyle*, 66 F.3d 71 (5th Cir. 1995).

---

[3] The court must perform an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

4

The court liberally construes pro se complaints, holding them to a less stringent standard than those drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The court is to liberally construe a pro se complaint to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972). When evaluating a pro se complaint, the court assumes Plaintiff's allegations to be true. *Erickson*, 551 U.S. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (outlining F. R. Civ. P. 8's pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). The mandated liberal construction afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## DISCUSSION

Plaintiff's Complaint does not contain an arguable legal theory upon which relief may be granted and should be dismissed pursuant to section 1915(e)(2)(B). *See Neitzke*, 490 U.S. at 325. Plaintiff maintains that Defendants violated his human rights under the UDHR. However, the UDHR is not a treaty or international agreement and "does not of its own force impose obligations

as a matter of international law." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004). As the UDHR was a non-binding resolution of the U.N. General Assembly, and thus aspirational rather than prescriptive, the UDHR has no bearing on whether Plaintiff's rights under the United States Constitution were violated and cannot support Plaintiff's claims in the instant case. *See Sosa,* 542 U.S. at 734 (rejecting FTCA claim alleging "arbitrary arrest" in violation of the UDHR because "the Declaration does not of its own force impose obligations as a matter of international law"); *Serra v. Lappin,* 600 F.3d 1191, 1196-97 n.5 (9th Cir. 2010) (noting UDHR not a "source of justiciable rights"); *Scinto v. Fed. Bureau of Prisons*, No. 5:10-CT-3165-D, 2011 WL 6780803 at *1 (E.D.N.C. Dec. 27, 2011) (noting UDHR has no bearing on whether a claimant's rights under the United States Constitution were violated).

To the extent that Plaintiff's Complaint also attempts to allege civil rights violations under 42 U.S.C. § 1983, he must show that Defendants deprived him of a federal constitutional or statutory right while acting under color of state law.[4] He has not done so. Even accepting his factual allegations as true, Plaintiff fails to state a plausible claim of violation of his right to due process and equal protection under the Fourteenth Amendment, or violation of any other constitutionally protected liberty interest. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

---

[4] Not itself a source of substantive rights, § 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by "person(s)" acting "under color of state law." *See Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See McKnight v. Rees*, 88 F.3d 417 (6th Cir. 1996). To state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

Although both state and federal prisoners retain many constitutional rights, incarceration inherently limits certain constitutional rights of prisoners. When a person is lawfully convicted and confined to jail, he or she loses a significant interest in his or her liberty for the period of the sentence. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Under *Sandin v. Conner*, 515 U.S. 472, 484 (1995), an inmate is entitled to a limited right of due process and/or equal protection *only* if a challenged action or condition of his or her confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," which, in the Fourth Circuit, has been held ***not*** to include: placement or retention in segregated administrative custody;[5] disciplinary detention;[6] protective segregation;[7] denial or loss of prison job;[8] denial of permission

---

[5] *See Backey v. South Carolina Dep't. of Corrections,* 73 F.3d 356 (4th Cir. Jan. 3, 1996) (table) (published in full-text format at 1996 U.S. App. LEXIS 46, 1996 WL 1737) (allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); *Joseph v. Gillespie,* 73 F.3d 357 (4th Cir. Dec. 21, 1995) (table) (published in full-text format at 1995 U.S. App. LEXIS 36321, 1995 WL 756280) ("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure.").

[6] *See Reffitt v. Nixon,* 917 F. Supp. 409, 412 (E.D.Va. 1996) (plaintiff has no protected interest in remaining in or being released into general population), aff'd, 121 F.3d 699 (4th Cir. 1997).

[7] *See Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984) ("Protective segregation is offered to inmates for their safety, the safety of others in confinement, and to insure institutional security and order. To allow prisoners in protective segregation to enjoy all of the same privileges to the same degree as those in the general population would eviscerate the value of protective segregation. Because the difference in treatment among prisoners in protective segregation and in the general population has a substantial, rational basis in the legitimate state interest of prison security, we hold that Allgood's rights to equal protection have not been abridged.").

[8] *See Williams v. Farrior*, 334 F. Supp. 2d 898, 904 & n.9 (E.D. Va. 2004) (inmates have no federally protected interest in a job assignment).

to participate in work release;⁹ or loss of canteen, visitation, and phone privileges.¹⁰ Plaintiff alleges that, "as a result of [his disciplinary] conviction, Def. Rowe sanction[ed Plaintiff] depriving [Plaintiff] of his privileges." ECF No. 1 ¶ 24. The denial of unspecified privileges is not alleged to have affected the duration of Plaintiff's sentence or imposed an atypical and significant hardship on Plaintiff, in relation to the ordinary incidents of prison life. Thus, Plaintiff fails to state a plausible claim of violation of any constitutionally protected interest afforded to a prison inmate.

Even if Plaintiff had alleged the implication of a protected liberty interest as a result of his disciplinary conviction, his Fourteenth Amendment claim would still be subject to summary dismissal as barred by the holding in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). In *Heck*, the United States Supreme Court held that a state prisoner's claim for damages is not cognizable under § 1983 where the success of the action would implicitly question the validity of the conviction or duration of the sentence, unless the prisoner can demonstrate that the conviction or sentence has been previously invalidated. *Heck*, 512 U.S. at 487. The Court extended *Heck's* ruling to a prisoner's claim for damages and declaratory relief regarding loss of good time credits in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), finding a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity

---

⁹ *See Kitchen v. Upshaw*, 286 F.3d 179, 189 (4th Cir. 2002).

¹⁰ *See United States v. Alkire*, No. 95-7885, 1996 U.S. App. LEXIS 7021, 1996 WL 166400, at *1 (4th Cir. Apr. 10, 1996) (no constitutional right to the use of a phone while in prison); *Goodwin v. Schwartz,* C/A No. 8:10-1760-CMC-BHH, 2010 U.S. Dist. LEXIS 91504 at *4 (D.S.C. Aug. 11, 2010) adopted by, dismissed without prejudice by *Goodwin v. Schwartz*, 2010 U.S. Dist. LEXIS 91506 (D.S.C., Sept. 1, 2010) (canteen access is not a protected liberty interest); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (an inmate's commissary restrictions "do not implicate due process concerns")); *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977) ("there is no constitutional right to prison visitation").

of the punishment imposed, is not cognizable under § 1983". *See Edwards v. Ogunsile*, C/A No. 0:09-3319-TLW-PJG, 2011 U.S. Dist. LEXIS 19568, 2011 WL 779884, at *3 (D.S.C. Jan. 24, 2011) ("The rule in *Heck* applies to prison disciplinary convictions as well as criminal ones.").

While *Heck* and *Balisok* do not universally apply to all suits challenging prison disciplinary proceedings or institutional offense convictions, when the administrative action affected credits toward release based on good time served, *Heck* and *Balisok* bar a § 1983 claim. *See Muhammad v. Close*, 540 U.S. 749, 751 (2004). Plaintiff has not shown that his institutional conviction and disciplinary sanction have been invalidated. Thus, to the extent Plaintiff is seeking monetary damages, injunctive relief, and declaratory relief for a disciplinary proceeding that may have resulted in loss of good time credits, his Fourteenth Amendment claims are barred by the holdings in *Heck* and *Balisok*. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *Bryan v. SCDC*, C/A No. 3:08-846-RBH, 2009 WL 3166632 at *5 (D.S.C. Sept. 29, 2009).

Furthermore, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Prison administrators are allowed to take reasonable precautions to ensure that prison mail is not used for illicit purposes. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (noting a prison regulation or policy that impinges on an inmate's constitutional rights is valid "if it is reasonably related to legitimate penological interests"); *Altizer v. Deeds*, 191 F.3d 540, 547 (4th Cir. 1999) ("Without question, the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional[.]"). Thus, to the extent Plaintiff's Complaint attempts to challenge the constitutionality of SCDC's policies designating certain entities as security

threat groups ("STGs") and restricting inmate correspondence and other activities concerning those groups, Plaintiff's claim is without merit. In *Mickle v. Moore (In Re: Long Term Admin. Segregation of Inmates Designated as Five Percenters)*, 174 F.3d 464 (4th Cir. 1999), the Fourth Circuit held:

> According to the SCDC, the purpose of the STG policy is "to promote the secure, safe, and orderly operations of all SCDC institutions, . . . to facilitate the early detection of [STG] activities and members and to ensure, to the extent possible, efficient intervention into possible volatile situations." SCDC Policy No. OP-21.01. These are not simply legitimate penological interests - they are compelling.

*Mickle*, 174 F.3d at 469 (citing *Hines v. S.C. Dep't of Corr.*, 148 F.3d 353, 358 (4th Cir. 1998)). Plaintiff's Complaint does not allege SCDC's policies and procedures that were employed to handle his mail were improper or that they were used to violate a constitutionally protected right of Plaintiff.

Finally, to the extent that Plaintiff attempts to assert additional common law claims by alleging that he is entitled to damages because Defendants alleged actions were "malicious, sadistic, reckless, callous, and intentional" to injure Plaintiff (ECF No. 1 ¶¶ 41-46), the court should decline to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(c). Because the Complaint's essential allegations fail to establish any claims "arising under the Constitution, laws, or treaties of the United States," *see* 28 U.S.C. § 1331, the Complaint does not state a claim cognizable under this court's federal question jurisdiction that would permit the court to exercise supplemental jurisdiction to consider any state law claims.

## RECOMMENDATION

It is recommended that the Complaint be summarily dismissed, without prejudice and without issuance and service of process.

IT IS SO RECOMMENDED.

*[signature]*

February 29, 2012  Kaymani D. West
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 2317
> Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).